### 8173.   ROBERTS *v.* BANK OF EUFAULA.

1. The Civil Code, § 3578, declares, in effect, that the implication of authority to collect, which exists on the part of an agent who produces the evidence of debt, does not arise where the debtor fails to require the production of such obligation; but this provision of law does not preclude the debtor from otherwise establishing such express or implied authority, nor from showing the subsequent ratification of the act by the creditor as principal.
2. The principle of law which requires that in order for an unauthorized act to be capable of ratification, the one who performed the act must have purported to act in the name of and on behalf of the principal, can not be invoked by the plaintiff in this case, under the facts disclosed by the record.
3. Where, before the maturity of a promissory note, an unauthorized agent, purporting to act in the name of the payee, collects for the latter the entire amount owing on the note, and the creditor, with full knowledge of the transaction, accepts a portion of the proceeds and consents that the person making the collection may use the remainder for a few days, the creditor will be held to have ratified the collection in toto.

DECIDED JUNE 14, 1917.

Foreclosure of mortgage; from Clay superior court—Judge Worrill.   September 16, 1916.

*E. R. King, L. M. Rambo,* for plaintiff in error.

*James W. Harris,* contra.

JENKINS, J.   L. L. Roberts executed and delivered to the Farmers & Merchants Bank, Georgetown, Georgia, a certain note and mortgage on personal property, dated April 28, 1915, due October 15, 1915, for $2,000.   Before maturity the payee sold and delivered the note and mortgage to the Bank of Eufaula.   Upon the foreclosure of the mortgage by the latter bank for the remaining principal sum of $500 and interest alleged to be due thereon, the mortgagee filed an affidavit of illegality, setting up payment as follows:   "On the 6th day of October, 1915, deponent paid to L. G. Brannon, cashier of Farmers and Merchants Bank of George-

town, the sum of two thousand dollars with which to pay off and cancel the mortgage foreclosed; . . said mortgage was in the hands of plaintiff, and said Brannon informed Lawrence Wilds, cashier of plaintiff bank, that he had collected the two thousand dollars, the full amount of said note and mortgage, and that he, Brannon, wanted to pay over to said Wilds the sum of fifteen hundred dollars, and that he, Brannon, wanted to use the balance of five hundred dollars for a few days, and said Wilds consented to same, which was without the consent of deponent. The plaintiff knew the whole amount of said mortgage had been paid, and credited said Brannon with five hundred dollars of the amount of said mortgage for the term of several days." To this affidavit the plaintiff demurred as follows: "1. Because the said plea of illegality fails to set forth any legal defense. 2. Specially because said plea of illegality fails to show that L. G. Brannon individually, or as cashier of the Farmers & Merchants Bank, of Georgetown, Georgia, had in his possession the note and mortgage in question at the time defendant made said payment, or that the said Brannon, either individually or in his representative capacity as said cashier, was the duly authorized agent of the Bank of Eufaula to make said collections, or that all the money actually collected reached the plaintiff. 3. Because said plea of illegality is evasive and uncertain and does not set forth any complete contract between Brannon and Lawrence Wilds for procuring the loan of $500." Defendant attempted to amend his defense by showing the following facts: "That defendant has fully paid and satisfied said mortgage by paying the same, for that this defendant did, on October 6th, 1915, pay to L. G. Brannon, who was at the time cashier of the Farmers and Merchants Bank of Georgetown, at the time a going concern and doing a banking business, $2,000.00, as a payment of said paper. That on the same day Mr. Lawrence Wilds, president of the Bank of Eufaula, came to see L. G. Brannon, and was by the said Brannon given full information of said payment of said $2,000.00 by said Roberts, and he, the said Wilds, acting as president of the Bank of Eufaula, for it and in its behalf, and having authority to then and there so act for the plaintiff bank, ratified the collection of said $2,000.00 by said Brannon, and ratified the payment of said money as payment of the above-mentioned note and mortgage by the said Roberts to the said Bran-

non, by accepting $1,500.00 thereof with full knowledge of said full payment of the amounts due on said note and mortgage, and by lending to said L. G. Brannon $500.00 of the amount so paid, as aforesaid, to be by Brannon repaid to the plaintiff bank in a few days, and by retaining said $1,500.00 of said $2,000.00 paid as aforesaid, with full and complete knowledge of the payment of the entire amount due on said note and mortgage as aforesaid, and defendant pleads that by the ratification of the payment by said Roberts to said Brannon as aforesaid, the plaintiff did ratify the right of and the act of said Brannon in receiving payment as aforesaid; and defendant further pleads that the plaintiff bank has not paid back to defendant or offered to pay back to defendant the sum of $1,500.00 which it received as aforesaid." The trial judge passed the following order: "The above and foregoing demurrer having been argued, and thereafter an amendment to the plea of illegality having been submitted, and after argument thereon, the said demurrer is hereby sustained and the plea of illegality and amendment thereto is hereby stricken."

1. Section 3578 of the Civil Code of 1910 provides as follows: "Where money is due on a written evidence of debt, payment to an agent of the creditor who fails to produce the obligation is at the risk of the debtor. Non-production of the security rebuts the implication of authority arising from the agent's employment, and it must be otherwise established." In the case of the *Bank of the University* v. *Tuck,* 96 *Ga.* 456 (23 S. E. 467), the court held: "Where the maker of a negotiable promissory note pays the same to the original payee without requiring the production and surrender of the paper, he is liable to pay it again to an innocent holder who acquired title to it in good faith and for value before maturity, unless the payee was the holder's general agent for the collection of such papers, or had special authority to collect in the particular instance, or the money collected in fact reached the holder's hands." See also the same case as reported in 101 *Ga.* 104 (28 S. E. 168).

Roberts does not contend, however, that he is protected in the payment of the $2,000 to Brannon as originally made, by reason of the fact that the latter was the cashier of the Farmers & Merchants Bank, the payee named in the note, but concedes that unless the pleadings show such a ratification by the plaintiff of the

collection made as would relate back thereto and thereby constitute Brannon its agent in that transaction, then the plaintiff would not be bound thereby. He does insist that the allegations as made show that the act of Brannon in collecting the $2,000 was in fact ratified by plaintiff, and that by so doing the agency of Brannon for it relates back to the time of the collection, and that he is for this reason protected in such payment. The contention is that although Brannon was not the agent of the plaintiff bank when he made the collection, he became such by ratification of the acts done by him in its behalf.

The terms of the code-section quoted do not preclude a party who makes payment on a note to one who fails to produce the obligation from carrying the burden there imposed of establishing the authority of the agent to collect. The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another in his behalf. Civil Code (1910), § 3569. A ratification by the principal relates back to the act ratified, and takes effect as if originally authorized. Civil Code (1910), § 3591; *Todd* v. *German-American Insurance Co.*, 2 *Ga. App.* 789 (3), 798 (59 S. E. 94). Thus it is that in a case of this sort "non-production of the security rebuts the implication of authority arising from the agent's employment, and it must be otherwise established," by proof of either express or implied authority or by the proved subsequent ratification of the act. The provisions of section 3578 relate simply to the burden of proof, and provide that the implication of authority which exists as to the agent who produces the obligation does not arise in favor of one who makes payment on a written obligation without requiring its production. These statements are in entire accord with the ruling made in the case of *Bank of the University* v. *Tuck,* supra. In that case, as first reported, it is stated in the opinion that there was nothing in the evidence to show that the bank had in express terms ever made the warehouse company its general or special agent, authorized to accept the payment, nor was there any evidence of ratification on its part. The court held that there was evidence sufficient, growing out of the alleged course of dealings, to authorize a submission to the jury of the question as to whether there existed an implied agency to collect on the part of the warehouse company at the time

payment was made to it. The other cases cited by counsel for the plaintiff, along with the one just discussed, make rulings of similar purport, and are not at variance with the principle here announced. Since, in the present case, it was not alleged that Brannon, at the time the collection was made by him, had been, either expressly or by implication, authorized by the plaintiff so to do, the sole question before us relates to whether or not, under the pleadings, the plaintiff subsequently ratified the unauthorized act of Brannon so as to become bound thereby.

2. The plaintiff contends that the doctrine of ratification can not have proper application in this case, for the reason that a subsequent ratification of the acts of another must be for acts assumed to have been done in his behalf. He insists that in the defense filed there is nothing going to show that Brannon professed to be, or assumed to act as, the agent of plaintiff bank and on its behalf. In support of the principle of law here invoked the plaintiff cites: 1 Mechem on Agency, §§ 386, 387; 2 C. J. § 91; *Florida Midland &c. Railroad Co.* v. *Varnedoe,* 81 *Ga.* 175 (7), 178 (7 S. E. 129); *Thompson* v. *Brown,* 121 *Ga.* 814 (2) (49 S. E. 740). We think, however, that the pleadings in the case, upon which alone disposition was given thereto, go to show that the payment to Brannon was not made to him and received by him in his individual capacity or as the agent of the defendant, but that the transaction was based upon the mutual assumption of his agency for the plaintiff, and that such act on his part was done in the plaintiff's name. In the original affidavit it is stated that "Brannon informed Wilds, cashier of plaintiff bank, that he had *collected* the two thousand dollars." It is stated therein that "the plaintiff knew the whole amount of said mortgage had been *paid.*" The amendment sets forth that the defendant turned over to Brannon the $2,000, "as a *payment* of said paper;" that Wilds "ratified the *collection* of said $2,000.00, and ratified the *payment* of said money as payment of the above-mentioned note;" that the plaintiff did "ratify the right of and the act of said Brannon in receiving the *payment* as aforesaid." Had the money been turned over by the defendant to Brannon in his individual capacity, or simply as his own agent, to be transmitted by him to the plaintiff, the transaction certainly could not properly be designated either as a collection or as a payment in satisfaction

15

of the debt. We are therefore of the opinion that the principle here invoked by the plaintiff is irrelevant, under the proper import and intent of the pleadings.

3. This brings us to the crucial question in the case: Did the plaintiff ratify the collection made by Brannon on its behalf, and, if so, did such ratification amount to validating the unauthorized act in toto or only in part? Section 3593 of the Civil Code provides that "If the agent exceeds his authority the principal can not ratify in part and repudiate in part; he must adopt either the whole or none." See also: *Fruit Dispatch Co.* v. *Roughton-Halliburton Co.*, 9 *Ga. App.* 108 (70 S. E. 356); *Dolvin* v. *American Harrow Co.*, 125 *Ga.* 699 (54 S. E. 706, 28 L. R. A. (N. S.) 785). It is not requisite to the ratification of an unauthorized act of one assuming to act as the agent of another that the acquiescence should be in express terms. In most cases such a ratification can be implied from the acts and conduct of the principal. As a general rule, if the principal, with full knowledge of all the material facts, accepts and retains the benefits of the unauthorized act, he thereby ratifies the act. Of course, as stated, ratification necessarily implies complete knowledge of all the material facts relating to the transaction. *Dolvin* v. *American Harrow Co.*, 131 *Ga.* 300 (8), 308 (62 S. E. 198); *Butler* v. *Standard Guaranty &c. Co.*, 122 *Ga.* 371 (3) (50 S. E. 132). In the absence of such knowledge on the part of the principal, upon his being apprised of the facts, he is privileged to make his election either to stand upon the unauthorized act of the agent, or else repudiate it and restore the benefits thereof.

The unauthorized act of Brannon in this case consisted in the collection of the full amount of $2,000 due on the mortgage. According to the pleadings the plaintiff had full and exact knowledge of the entire transaction, before committing itself in reference thereto. The act which it was called upon either to affirm or repudiate was the one actually performed, the collection as in fact made. It chose to accept from Brannon $1,500 of the amount collected, and "consented" that he might "use the balance of $500 for a few days." Under our view of the law of the case, the plaintiff could not receive a substantial benefit from the unauthorized act of Brannon without ratifying the transaction in its entirety. It was held in the case of *American Ex. Bank* v. *Georgia &c. Co.*,

87 *Ga.* 651, 657 (13 S. E. 505), that where money is raised by one on the credit of another, without authority, the retention of any part of the money by the latter will be a ratification. Chief Justice Bleckley, speaking for the court in that case, said: "By retaining the money, after knowledge that it was raised on his credit by an assumption of authority, B ratifies the act, irrespective of whether he intends to ratify it or not, and as he can not ratify in part and repudiate in part, such ratification will result from retaining any of the money with no offer to return the amount retained, although he may have paid out the residue for A's benefit before acquiring knowledge of all the material facts." In *Hughes* v. *Neal Loan & Banking Co.,* 97 *Ga.* 383 (23 S. E. 823), the court held: "The evidence of the plaintiff herself showing affirmatively that, though she had never indorsed the government check payable to her order, she had ratified its unauthorized collection by accepting in settlement of her claim a part of the proceeds of the check and a promissory note, and that in so doing she acted with a full knowledge of all the material facts, the bank through which the collection of the check was negotiated was not liable to her, and the court was right in awarding a nonsuit.

But most especially do we think, under the pleadings in the case, that the plaintiff should not be permitted now to repudiate in part the act of Brannon in making the collection, since it was only by its own consent that the plaintiff failed to receive the full amount due on the mortgage. And while it may be correctly pointed out by the demurrer that the affidavit fails to set up a full and exact contract between the plaintiff and Brannon, whereby the latter procured a loan from the former of the remaining $500, still it appears from the affidavit that, in a constructive sense at least, the money reached the plaintiff, since it was retained by Brannon only with the plaintiff's consent. It is insisted by the plaintiff that the acceptance of the $1,500 by the plaintiff could not amount to a ratification of the entire collection by Brannon, even with full knowledge thereof, for the reason that in doing so the plaintiff held and retained only that which was intended for it and to which it was entitled. In support of this proposition the case of *Baldwin Fertilizer Co.* v. *Thompson,* 106 *Ga.* 480 (2) (32 S. E. 591), is cited. In that case it was held: "A principal who in law is entitled to the possession and control of personal property is not

bound by an unauthorized agreement of an agent by which the principal obtains the possession thereof, nor will the principal, merely by retaining possession of such property after receiving the same from the agent, be charged with a ratification of the act of the agent. This is so because it is the right of the principal, either with or without such an agreement, to hold and possess the property." Justice Lumpkin, in referring to this case, in *Dolvin* v. *American Harrow Co.*, supra, stated that here "the principal only received notes to the possession of which it was legally entitled regardless of the agreement of the agent." We think there is a manifest distinction which should be made between a case like the one cited and the one at bar. While in the case at bar the holder of the mortgage was, upon its maturity, entitled to satisfaction thereunder, still it had no especial claim to the funds in question, except by virtue of the payment. It will furthermore be observed, from the statement of facts, that when the money was accepted by the plaintiff the note and mortgage had not even in fact become due; and for this additional reason the authority cited does not appear to this court to be pertinent and controlling.

It is our opinion that it was error to sustain the demurrer to the affidavit as amended.

*Judgment reversed. Broyles, P. J., and Bloodworth, J., concur.*